**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| NONA BANDY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 12-00491-KD-C |
| | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| Defendant. | ) | |

**ORDER**

This action is before the Court on the Defendant's Motion for Judgment on the Pleadings (Doc. 12) and supporting brief (Doc. 13) filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, along with the Plaintiff's Response (Doc. 15) in opposition and the Defendant's Reply in support (Doc. 18).  Upon consideration, and for the reasons stated herein, the Court finds that the Defendant's motion is due to be **GRANTED in part** and that this action is due to be **DISMISSED**.

**I.      Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure allows for a party to move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial[.]"  The last day for Plaintiff to move to amend the pleadings was December 7, 2012,[1] and the last day for the Defendant was January 8, 2013.  (Doc. 17, ¶ 4).  Defendant filed its motion for judgment on the pleadings on October 10, 2012, well before the close of pleadings but after filing its Answer.  The pleadings are now closed.  Therefore, the Court finds the motion for judgment on the pleadings to be ripe for consideration.

The Defendant's Rule 12(c) motion raises a Rule 12(b)(6) defense of failure to state a

---

[1] A typographical error in the Court's Rule 16(b) Scheduling Order erroneously sets Plaintiff's deadline to amend the pleadings as "December 7, 2013."  (Doc. 17, ¶ 4).

claim upon which relief can be granted, which is permitted under Rule 12(h)(2)(B).  "If a party uses Rule 12(c) to assert a 12(b)(6) defense [ ... ] the Court will apply the same standards to the motion as if it were brought directly under Rule 12(b)(6)."  Riley v. Gen. Motors Acceptance Corp., Civ. No. 01-0869-CG-S, 2002 WL 32932411, at *1 (S.D. Ala. Nov. 8, 2002) (quoting Sikes v. Am. Tel. & Tel. Co., 841 F. Supp. 1572, 1580 (S.D. Ga. 1993)).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  Jiles v. United Parcel Serv., Inc., 413 F. App'x 173, 174 (11th Cir. 2011) (quoting Cunningham v. Dist. Attorney's Office for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010) (quotations and citation omitted)).  See also Jones v. NordicTrack, Inc., 236 F.3d 658, 660 (11th Cir. 2000) (citation omitted) ("Judgment on the pleadings is appropriate when no issues of material fact are raised in the pleadings and the movant is entitled to judgment as a matter of law.").  In making this determination, the Court must "accept the facts presented in the complaint as true and view them in the light most favorable to the nonmovant."  Jiles, 413 F. App'x at 174 (citation omitted).  "Dismissal is not appropriate unless the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct."  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007)).

## II.     Facts[2]

Plaintiff Nona Bandy ("Bandy") alleges six causes of action against Defendant Midland Funding, LLC ("Midland") in connection with Midland's filing of a debt collection lawsuit

---

[2] In making its findings of fact, the Court has "accept[ed] the facts presented in the complaint as true and view[ed] them in the light most favorable to the nonmovant[, the Plaintiff]."  Jiles, 413 F. App'x at 174. Unless otherwise noted, all facts have been derived from the Complaint, and the Court will reference such findings by either paragraph or page number.

against her in Alabama state court. The first alleges that Midland has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Pages 20-23). The second alleges invasion of privacy under both federal and Alabama law. (Pages 24-26). The remaining four allege various causes of action against Midland under Alabama law: "negligent, wanton, and/or intentional hiring and supervision of incompetent employees or agents," "negligent, wanton, and intentional conduct," malicious prosecution, and abuse of process. (Pages 26-31).

Midland is a debt collector in the business of buying portfolios of consumer debts, which are bundled and packaged as assets to be sold on the secondary market after the original creditors cease collection efforts or otherwise charges off[3] the accounts. (¶¶ 8-9). The debt portfolios are purchased at a significant discount from the original balances owed. (¶ 10). Midland will then attempt to collect the entire balance owed to the original creditor on each of these debts in an attempt to realize a profit. (¶ 11). When Midland purchases such portfolios, it receives very little information regarding the alleged debts of from the original creditor, typically receiving only a Bill of Sale and a computerized summary containing some information about the debtors. (¶ 12). This information is not sufficient to establish the validity of the debt or support a judgment against the debtor. (¶ 13).

Midland uses the information contained in a debt portfolio to conduct informal collection efforts, often consisting of contacting or attempting to contact the debtors by phone or by mail. (¶¶ 15-16). When such informal methods do not result in payment by a debtor, Midland then turns to litigation, referring its collection efforts to collection law firms in Alabama. (¶¶ 18-19). Typically, the collection law firms will first conduct their own informal collection efforts. (¶

---

[3] "A 'charge off' is the removal of an account from a credit card issuer's books as an asset after it has been delinquent for a period of time, usually 180 days." Krawczyk v. Centurion Capital Corp., No. 06-C-6273, 2009 WL 395458, at *1 n.2 (N.D. Ill. Feb. 18, 2009) (citing Black's Law Dictionary (8th ed. 2004)).

21).  If those efforts are unsuccessful, the firms then file suit against debtors in Alabama state courts.  (¶ 22).

Midland claims to have purchase consumer debt allegedly owed by Bandy.  (¶ 56).  In purchasing this debt, Midland received from the original creditor only a Bill of Sale and a computerized summary containing limited information about Bandy.  (¶ 57).  Without taking reasonable steps to ensure the validity of the alleged debt, Midland engaged in collection efforts against Bandy.  (¶ 59).  Bandy claims she did not owe the debt to Midland and refused to make any payments.  (¶ 60).  Eventually, Bandy's debt was assigned to a collection law firm.  (¶ 61).  At the time, Midland had no evidence of 1) Bandy entering into a contract, opening an account, or otherwise creating the debt, 2) when or how Bandy defaulted on the debt, 3) the date the debt was charged off, 4) the amount due on the debt the date of either default or charge-off, 5) how the amount of money claimed was calculated, or 6) Midland's ownership of the debt.  (¶ 62).

In spite of this lack of evidence, and again without taking reasonable steps to ensure the validity of the debt, Midland sued Bandy on the debt in the District Court of Mobile County, Alabama, Case No. 02-DV-2011-904025.00.  (¶ 63).  Midland's complaint indicated only the sum of money it claimed from Bandy and contained no information regarding the factual basis of its claims, the date Bandy allegedly defaulted on the debt, the date the debt was charged off, the amount due on the date of default or charge-off, how the sum was calculated, or the identity of the original creditor.  (¶¶ 64-65).  Bandy filed an answer denying Midland's claims and asking for verification of the debt.  (¶ 68).  Trial was set for March 15, 2012.  (¶ 69).  During the course of the litigation, Midland never engaged in discovery efforts to obtain admissible evidence to verify its claims, nor did it ever provide Bandy with any competent document to substantiate the validity of the debt.  (¶¶ 70-71).  Bandy obtained counsel and trial proceeded as scheduled.  (¶¶

4

73-74).

Counsel for Midland appeared but without witnesses or any competent or admissible evidence to substantiate its claims. (¶ 76). That same day, the trial court entered an order stating: "This case was set before the Court on March 15, 2012, for trial. [Midland]'s attorney[] and [Bandy] appeared. After hearing testimony, the Court enters a judgment for [Bandy]." (Doc. 13-1, Order of Mobile County District Court).[4] Midland filed no timely Notice of Appeal in the case. (¶ 79).

Bandy denies owing any debt to Midland and contends that Midland's "intent, at the time of filing and throughout the [state court] litigation, was *not* to initiate the action and prove its claims in court; but rather, to imply to [Bandy], through its collection law firm and its collection lawsuit, that it was *willing* to prove its claims and thereby intimidate or otherwise coerce [Bandy] into 1) paying [Midland] or 2) taking no action and allowing [Midland] to obtain a default judgment." (¶¶ 66-67). Bandy further alleges that "the thousands of state court collection lawsuits commenced in Alabama by [Midland] each year are not filed in good faith" (¶ 24) because Midland "*does not have any intention* of ever obtaining any competent and admissible evidence to establish its claims" and "has no intention of taking its claims to trial where it will be required to obtain, lay a proper evidentiary foundation for, admit, and otherwise present competent evidence to establish the validity of the alleged debt . . . and otherwise substantiate the merit of its claims." (¶¶ 24,27). This "abusive, scattershot litigation" is allegedly the "pattern and practice" of Midland's business, the purpose of which is to either obtain default judgments or coerce payment or settlement agreements from debtors by targeting their senses of fear and

---

[4] Though a copy of the state court's order was not included with the pleadings, the Court may consider it without converting the present motion to a motion for summary judgment (pursuant to Rule 12(d)) because 1) it is central to Bandy's claim and 2) its authenticity is not challenged. See, e.g., Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

embarrassment, their lack of understanding of Midland's business and the judicial process, and their feelings of helplessness about being pursued and litigated against by Midland.  (¶¶ 25-26, 30).

In her First Cause of Action, Bandy alleges the following violations of the FDCPA by Midland:

83. Defendant, by bringing and maintaining its collection lawsuit, represented to Plaintiff (and to the court) that it intended to prove its claims However, Defendant's actual intention was not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff; as such, Defendant's act of bringing and maintaining its collection lawsuit was taken in violation of the FDCPA as it was a threat to take an action (i.e. proving its case at trial) that Defendant did not actually intent to take.  [citing 15 U.S.C. §1692e(5)]

84. Defendant, by through bringing and maintaining its collection lawsuit, represented to Plaintiff (and to the court) that it intended to prove its claims. However, Defendant's actual intention was not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff; as such, Defendant's act of bringing and maintaining its collection lawsuit was taken in violation of the FDCPA as it was a false, deceptive and misleading action taken by Defendant in connection with collecting a debt.  [citing 15 U.S.C. §1692e(10)]

85. Defendant, in its complaint, stated the character, amount, and legal status of the alleged debt it claimed Plaintiff owed and, in the face of Plaintiff's denial of the same, Defendant maintained its allegations, despite the fact that it had no knowledge of the validity of the alleged debt or the existence of any facts that would substantiate its causes of action and did not take, or ever intend to take, any reasonable steps to ensure the validity of the alleged debt or discover the existence of any facts that would substantiate its causes of action; as such, Defendant misrepresented the character, amount, and legal status of the alleged debt in violation of the FDCPA. [citing 15 U.S.C. §1692e(2)(A)]

86. Defendant, in its complaint, sought to recover monies that Plaintiff would only be liable to pay pursuant to a written agreement and, in the face of Plaintiff's denial that such an agreement exists, Defendant maintained its allegation that such sums were due despite the fact that Defendant had no knowledge of the existence of any such agreement and did not take, or ever intend to take, any reasonable steps to prove the existence of such an agreement; as such, Defendant attempted to collect an amount not expressly authorized by an agreement or permitted by law in violation of the FDCPA. [citing 15 U.S.C. §1692f(1)]

6

87. Defendant's intention in filing its collection lawsuit was not to prove its case, but to use its collection lawsuit to obtain a default judgment or as a tool to coerce payment from Plaintiff; an "unfair and unconscionable" action taken a violation of the FDCPA. [citing 15 U.S.C. §1692f]

(¶¶ 83-87 (brackets added) (footnotes omitted)).[5]

Additionally, in her Second Cause of Action, Bandy alleges invasion of privacy pursuant to federal as well as Alabama law, claiming that Congress has recognized a consumer's right to privacy both in collection matters under the FDCPA, 15 U.S.C. § 1692(a), and in financial data under the Gramm-Leech-Bliley Act, 15 U.S.C. § 6801(a).  (Pages 24-26).

## III.   Analysis

### a.   FDCPA Claims

The FDCPA was enacted, among other reasons, "to eliminate abusive debt collection practices by debt collectors[.]"  15 U.S.C.A. § 1692(e).  The FDCPA is a remedial statute, and its provisions are to be liberally construed in favor of consumer debtors.  Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002); Mammen v. Bronson & Migliaccio, LLP, 715 F. Supp. 2d 1210, 1213 (M.D. Fla. 2009).  Bandy alleges violations of the following FDCPA provisions:

- **§ 1692e.  False or misleading representations:**

   A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
   . . .
   **(2)** The false representation of—

   **(A)** the character, amount, or legal status of any debt; or

   . . .
   **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

   . . .

---

[5] The Court has subject matter jurisdiction over the FDCPA claims pursuant to 15 U.S.C. § 1692k(d), over all federal claims pursuant to 28 U.S.C. § 1331, and over the state law claims pursuant to 28 U.S.C. § 1367(a).

**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

- **§ 1692f.  Unfair practices:**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
. . .

The Eleventh Circuit generally applies the "least sophisticated consumer" standard to determine whether a representation is false, deceptive, or misleading under § 1692e. <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168, 1172-75 (11th Cir. 1985).  The relevant question "is not whether [the consumer plaintiff] was deceived, but whether the 'least sophisticated consumer' would have been deceived. <u>Id.</u> at 1178 n.11.  However, this standard does not apply to claims under § 1692e(5), as the issue in that subsection is "simply whether or not [a debt collector] *intended* to take the action threatened. Thus, subsection (5) requires proof of a fact which amounts to a *per se* violation of § 1692e.  The sophistication, or lack thereof, of the consumer is irrelevant to whether [the debt collector] 'threat[ened] to take any action ... that [was] not intended to be taken.' " <u>Jeter</u>, 760 F.2d at 1175 (quoting § 1692e(5)).

A close reading of the Complaint reveals that Bandy's FDCPA claims center around the allegation that Midland filed and prosecuted its collection lawsuit against Bandy, and routinely does so in many other state-court collection suits, without obtaining evidence and without ever intending to actually prove those claims.  However, assuming that the FDCPA even applies to state litigation processes,[6] the Court finds that Bandy's allegations fail to state a claim under the

---

[6] The Court is doubtful that the FDCPA applies to state court litigation.  <u>Cf. Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC</u>, 480 F.3d 470, 473 (7th Cir. 2007) ("[I]t is far from clear that the FDCPA

act.

In <u>Harvey v. Great Seneca Financial Corp.</u>, 453 F.3d 324 (6th Cir. 2006), to which

Midland has cited, the consumer-plaintiff alleged FDCPA claims similar to those made by

Bandy:

> Harvey's complaint alleges that [debt collector] Seneca and [collection law firm]
> Javitch filed a Complaint for Money without the means of proving that Harvey
> actually owed a debt to Seneca in the specified amount. Because Harvey's
> complaint uses imprecise language, we must decide whether Harvey intended to
> allege that (1) Seneca and Javitch filed the complaint without *having on hand at
> the time of filing* the means to prove the complaint, or (2) Seneca and Javitch filed
> the complaint without the means of *ever being able to obtain sufficient proof* of
> the debt-collection action.
>
> . . . A common-sense reading of Harvey's complaint convinces us that she alleged
> only that, at the time of filing, Seneca and Javitch did not have the means of
> proving their debt-collection claim. This reading of the complaint comports with
> the district court's understanding, which was not challenged by Harvey. **In
> addition, Harvey clarified her theory of the case in her appellate brief, which
> states that Seneca chooses not to acquire the documentation needed to prove
> its debt-collection claims "because of the time and cost of obtaining such
> documentation," not that it is incapable of doing so** . . .

453 F.3d at 327-28 (boldfaced emphasis added).  The Sixth Circuit, applying the reasoning in

<u>Deere v. Javitch, Block, & Rathbone, L.L.P.</u>, 413 F. Supp. 2d 886 (S.D. Ohio 2006), held that

such allegations failed to state a claim under § 1692e(10):

> In holding that Seneca and Javitch's filing of a lawsuit without the immediate
> means of proving the debt owed did not constitute a deceptive practice, the district
> court distinguished the case of <u>Delawder v. Platinum Financial Services Corp.</u>,
> No. C-1-04-680, 2005 U.S. Dist. LEXIS 40139 (S.D. Ohio March 1, 2005). The
> district court in <u>Delawder</u> upheld claims under 15 U.S.C. § 1692e(10) in a case
> where the debt collector allegedly attached a false affidavit to an unsubstantiated
> debt-collection claim. *Id.* at *14-15. Because Harvey did "not allege that [Seneca
> and Javitch] attached a false document to the ... complaint, nor even that [their]
> claims regarding the debt were false," the district court in the present case held
> that Harvey did not state a claim under 15 U.S.C. § 1692e(10).

controls the contents of pleadings filed in state court." (dicta)).  However, the Court need not directly
address the issue at this time, as even assuming that it does, Bandy has otherwise failed to state a claim
under the FDCPA.

Other cases that have considered factual scenarios similar to the one addressed here have adopted the reasoning and result of the district court in the present case. In <u>Deere v. Javitch, Block, and Rathbone, L.L.P.</u>, 413 F. Supp. 2d 886, 890 (S.D. Ohio 2006), for example, a case that the district court described as bearing a "striking resemblance to the complaint" in the present case, the court reasoned that

> filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt ... is not a false representation about the character or legal status of a debt [under § 1692e(2)(A)], nor is it unfair or unconscionable [under § 1692f]. A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery. Deere does not allege that anything in the state court complaint was false, or that the complaint was baseless. She essentially alleges that more of a paper trail should have been in the lawyers' hands or attached to the complaint. The FDCPA imposes no such obligation.

> <u>Id.</u> at 891; <u>see also</u> <u>Davis v. NCO Portfolio Mgmt., Inc.</u>, No. 1:05-CV-734, 2006 WL 290491, at *1-4, 2006 U.S. Dist. LEXIS 7133, at *4-10 (S.D. Ohio February 7, 2006) (unpublished) ("Davis does not allege that anything contained in the state court complaint filed against her was false. Davis does not admit or deny the existence of any underlying debt ....") (emphasis in original).

> The reasons cited in these other cases for dismissing claims under 15 U.S.C. § 1692e apply equally to the complaint at issue in the present case. Harvey never denied in her complaint that she owed Seneca a debt, nor did she claim that Seneca and Javitch misstated or misrepresented the amount that she owed. Her allegations against Seneca and Javitch therefore do not allege that Seneca and Javitch made "false representations" or used means that were "deceptive" in the traditional sense. *See* 15 U.S.C. § 1692e(10).

<u>Id.</u> at 331-32 (bracketed text added in third paragraph).

The Southern District of Florida has also explained <u>Deere</u> as holding "that where the collection agent law firm simply files a collection complaint, supported by evidence, it is not a violation of § 1692e(5)." <u>Gonzalez v. Erskine</u>, No. 08-20893, 2008 WL 6822207, at *3 (S.D. Fla. Aug. 7, 2008) (citing <u>Deere</u>, 413 F. Supp. 2d 886, 890-91 (S.D. Ohio 2006)). <u>See also</u> <u>Williams v. Javitch, Block & Rathbone, LLP</u>, 480 F. Supp. 2d 1016, 1022 (S.D. Ohio 2007) ("The 'theory' presented in <u>Deere</u> was that JB & R routinely files collection actions supported

only by 'summary information' on large amounts of bad debt that its creditor-client bought for pennies on the dollar. The Court rejected Deere's argument that this conduct runs afoul of Sections 1692d (harassing and abusive conduct), 1692e or 1692f, because a collection lawsuit supported by the client's sworn affidavit is not a 'false representation about the character or legal status of a debt, nor is it unfair or unconscionable.' <u>Deere</u>, 413 F. Supp. 2d at 891.").

In support of the viability of her FDCPA claims, Bandy cites several district court cases that have distinguished <u>Harvey</u> and <u>Deere</u> in declining to dismiss FDCPA claims arising from collection lawsuits in state courts. However, the Court is not persuaded by those cases. Unlike Bandy, who does not allege that the collection complaint contained *any statement* that Midland knew or should have known was false, in three of those cases the consumer-plaintiffs successfully stated FDCPA claims by alleging that representations made in the state court collection complaints themselves were intentionally false or deceptive. <u>See</u> <u>Williams</u>, 480 F. Supp. 2d at 1023 (declining to dismiss claims under §§ 1692e & f where the consumer-plaintiff alleged that an affidavit attached to the collection complaint "contained false or deceptive representations about the status and character of the debt in question" – specifically, that the defendant collection firm "knew or should have known that the 'account specialist' who executed the affidavit lacked personal knowledge of the matters she was attesting to in that affidavit"); <u>Gigli v. Palisades Collection, L.L.C.</u>, No. 3:CV-06-1428, 2008 WL 3853295, at *8 (M.D. Pa. Aug. 14, 2008) ("In <u>Harvey</u>, plaintiff alleged that the act of filing a lawsuit without immediate proof constituted a false or deceptive debt collection practice under § 1692e(10). Finding plaintiff's allegations insufficient, the court stressed that plaintiff never alleged the state court complaint contained any false representations. . . . But in this case, and contrary to Defendants' assertions, Ms. Gigli's FDCPA claims are not based on Defendants' filing of a debt

collection action, refusing to provide upon request substantiating documentation, and then dismissing the action. Rather, she has averred that the complaint filed in the underlying action falsely represented the character, amount, or status of a debt and sought to collect amounts not authorized by an agreement."); Simmons v. Portfolio Recovery Assocs., LLC, No. 3:11-CV-280, 2012 WL 222935, at *5 (E.D. Tenn. Jan. 25, 2012) ("[P]laintiff's allegations that the state court lawsuit was supported by an affidavit that contained **false or deceptive representations** about the status or character of the underlying debt, and allegations of a pattern and practice of filing similar lawsuits—allegations which the Court must take as true and construe most favorably towards plaintiff—could be deemed "unfair or unconscionable" in violation of the FDCPA[.]" (emphasis added)) (slip copy).

As for Kuria v. Palisades Acquisition XVI, LLC, 752 F. Supp. 2d 1293 (N.D. Ga. 2010), the consumer-plaintiff in that case alleged that the debt collector was incapable of ever proving the debt it alleged in its state court collection action.  752 F. Supp. 2d at 1301-02 ("Under [Harvey and Deere], a plaintiff has not satisfactorily pled a FDCPA violation against a defendant similarly situated to the defendant in the instant case where the plaintiff alleges only that the defendant filed a lawsuit to collect on a debt without knowledge or means of proof of the debt's validity. However, Harvey and Deere are distinguishable because in the instant case, Kuria has alleged in his complaint that Palisades sued him on a debt that he did not owe and that Palisades **could not ever prove**, intending to either obtain a default judgment or coerce him into a settlement." (emphasis added) (footnote omitted)).

Like the plaintiffs in Harvey and Deere, Bandy's FDCPA claims rest on the allegation that Midland *chose* not to acquire evidence needed to prove its case, not that it was *incapable* of doing so or that it could *never* do so.  See Kaplan v. Law Offices of Timothy E. Baxter &

Assocs., P.C., No. 11-14886, 2012 WL 4498231, at *3 (E.D. Mich. Sept. 28, 2012) ("The
Harvey court found that the plaintiff failed to state a claim when she did not allege that the
defendant would ever have the means to obtain proof of the debt owed.").  Moreover, though she
denies owing any debt to Midland (Doc. 1, ¶ 67), Bandy does not allege that Midland knew or
should have known that its claim was baseless, or that any information contained in the
collection complaint was false or deceptive.

Moreover, Bandy's allegation that Midland never intended to follow through on the
collection complaint and prove its case does not state a claim under § 1692e(5).  As explained in
Donatelli v. Warmbrodt:

> [Section 1692e(5)] of the FDCPA makes it illegal to threaten "to take any action
> that cannot legally be taken or that is not intended to be taken." In contending that
> this section has been violated, Donatelli again relies on the purported inadequacy
> of evidence supporting the state court claim. The Court has considered virtually
> all of these arguments under other provisions of section 1692e and has found
> them to be without merit. So too, here. The Court turns, therefore, to arguments
> that do not depend on the sufficiency of the evidence.
>
> The first of these is Donatelli's assertion that the Defendants violated section
> 1692e (5) when they took legal action that could not be legally taken by filing a
> state court complaint and failing to pursue that claim. [ECF No. 1 at ¶ 32].
> Donatelli is convinced—and is determined to convince the Court—that the state
> court complaint was filed without any intention of prosecution, given that there
> was insufficient admissible evidence to bring the claim to a successful conclusion.
> [Id. at ¶ 58]. According to Donatelli, the Defendants, by filing suit against him in
> state court, used that court "as an indirect debt collector as the one year absence of
> prosecuting the case proves that they had no intention of prosecuting the case[,]
> but simply filed the case in hopes of getting a default judgment." [ECF No. 1 at ¶
> 24].
>
> The essence of this argument was rejected in Deere, 413 F. Supp. 2d at 890.
> There, the debtor Defendant argued that the Plaintiff bought defaulted debt for
> pennies on the dollar, and routinely filed state court collection actions on which
> the default rate was at least ninety percent. If a debtor did contest the debt, the suit
> was routinely dismissed "based on the economics of pursuing a judgment in those
> circumstances." Id. The Court found that these facts had not been properly alleged
> in the complaint, but, in any event, did not support a reasonable inference that
> filing suit violated the FDCPA. Id. "A defendant in any lawsuit is entitled to

request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or though discovery." Id. at 891.

Donatelli, Civ. A. No. 08-1111, 2011 WL 2580442, at *7 (W.D. Pa. June 28, 2011).

The court in Hickman v. Alpine Asset Management Group, LLC, No. 11–1236–CV–S–MJW, 2012 WL 4062694 (W.D. Mo. Sept. 14, 2012), also addressed a similar claim.   In Hickman, the "complaint allege[d] that defendant Alpine violated the FDCPA when it used false, misleading, and aggressive tactics to collect on Hickman's alleged debt and that Alpine c[ould ]not prove that the debt is due and owing. Hickman allege[d] that not only did Alpine not have the original documents verifying the debt at the time it filed a collection suit in state court, it never intended nor could corroborate and prove its case against Hickman."   On summary judgment, the district court applied Harvey and Deere in rejecting plaintiff's claims under § 1692e & f.   See also Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 773 (E.D.N.C. 2011) ("Plaintiffs allege that the foreclosure hearing was not conducted as required under North Carolina law in that 'there was no evidence presented at the hearing as to prove the owner and holder of the note.' Am. Compl. ¶ 29 . . . Plaintiffs' allegations against the FDCPA Defendants are limited to the failure of the FDCPA Defendants to provide supporting documentation of the debt and related fees and 'handling the foreclosure proceedings.'[] Plaintiffs have not alleged any facts from which the court could draw a reasonable inference that the FDCPA Defendants made a false representation . . .  Plaintiffs' allegations deal strictly with the manner and means by which proof of the debt was presented by the FDCPA Defendants. See Am. Compl. ¶ 26. To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim as 'insufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e.' " (quoting Donatelli, 2011 WL 2580442, at *6,

14

in last sentence; also citing <u>Harvey</u>)).

The Court finds Bandy's claims analogous to those alleged and rejected in <u>Harvey</u>, <u>Deere</u>, and <u>Donatelli</u> and finds that they too fail to state a claim under § 1692e or § 1692f. Without more, Midland's filing and prosecution of its state court collection lawsuit without possessing or obtaining evidence to prove its claims does not rise to an FDCPA violation.[7] Alabama law already provided Bandy adequate protection against being sued without substantial justification, and the underlying collection lawsuit was the proper forum to address such an issue. <u>See</u> <u>McKnight v. Benitez</u>, 176 F. Supp. 2d 1301, 1305 (M.D. Fla. 2001) ("There is no indication whatsoever that Congress considered state law legal remedies to be 'abusive,' nor does it appear necessary to alter the procedures for filing state lawsuits to level the playing field. After all, if state lawsuits are used in an abusive manner, protection already exists in the court where the action is brought."); <u>Jenkins v. Centurion Capital Corp.</u>, No. 07 C 3838, 2009 WL 3414248, at *5 (N.D. Ill. Oct. 20, 2009) ("Absent any contrary authority or reasoning, Defendants' delay in voluntarily dismissing the State Court Lawsuit is an issue more appropriately left to the state court and not one giving rise to a federal cause of action."). As such, Bandy's FDCPA claims are due to be **DISMISSED with prejudice**.[8]

In support of her claim for a federal cause of action for invasion of privacy, Bandy cites only to § 1692(a) of the FDCPA (simply stating a Congressional finding that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to

---

[7] Moreover, with regard to Bandy's allegations that Midland's actions also unlawfully misled or deceived the state court (Doc. 1, ¶¶ 83-84), the Court agrees with the Seventh Circuit's holding that, "[b]ecause nothing in the Act's text extends its protections to anyone but consumers and those who have a special relationship with the consumer, . . . the Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge." <u>O'Rourke v. Palisades Acquisition XVI, LLC</u>, 635 F.3d 938, 944 (7th Cir. 2011), <u>cert. denied,</u> 132 S. Ct. 1141 (2012).

[8] Because the Court has determined that Bandy has not alleged an FDCPA violation, the Court does not address the remaining arguments raised by Midland in its briefs.

the loss of jobs, and to invasions of individual privacy") and 15 U.S.C. § 6801(a) of the Gramm

Leech Bliley Act (stating that "[i]t is the policy of the Congress that each financial institution has

an affirmative and continuing obligation to respect the privacy of its customers and to protect the

security and confidentiality of those customers' nonpublic personal information").   Neither of

these provisions creates a cause of action for invasion of privacy, and Bandy has given the Court

no other reason to believe that she is entitled to assert such a claim pursuant to federal law.

Therefore, this claim is also due to be **DISMISSED with prejudice**.

> **b.  State Law Claims**

The Court finds that Bandy's remaining claims under Alabama law are due to be

**DISMISSED without prejudice** for lack of subject matter jurisdiction.   The Court has original

jurisdiction over Bandy's FDCPA claims pursuant to 15 U.S.C. § 1692k(d), and over all of her

federal claims pursuant to federal question jurisdiction under 28 U.S.C. § 1331.   However, the

Court has determined that Bandy's federal claims are due to be dismissed.   Therefore, to the

extent that the Court has supplemental jurisdiction over Bandy's state law claims pursuant to 28

U.S.C. § 1367, the Court declines to continue exercising such jurisdiction in light of the

"dismiss[al of] all claims over which it has original jurisdiction."  § 1367(c)(3).

Bandy appears to allege that this Court has original jurisdiction over her claims pursuant

to diversity of citizenship under 28 U.S.C. § 1332.  (Doc. 1, ¶ 6).  However, Bandy has not

alleged a specific amount in controversy, stating only that "the amount in controversy exceeds

the minimum jurisdictional limits of this Court."  (Id.).   Regarding the determination of the

amount in controversy to support diversity jurisdiction, the Eleventh Circuit has stated:

> "Dismissal of a case brought under 28 U.S.C. § 1332 is proper where the
> pleadings make it clear to a legal certainty that the claim is really for less than the
> jurisdictional amount." Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th
> Cir. 2002) (quotation omitted). "However, where jurisdiction is based on a claim

for indeterminate damages, the ... 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Federated Mut. Ins., 329 F.3d at 807. "A conclusory allegation ... that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiff's] burden." See Leonard, 279 F.3d at 972 (quotation omitted)(addressing removal from state court); see also Federated Mut. Ins., 329 F.3d at 809 (noting that a party's mere speculation that the amount in controversy met the jurisdictional threshold did not satisfy its burden of proving beyond a preponderance of the evidence the claim at issue exceeded $75,000).

Bradley v. Kelly Servs., Inc., 224 F. App'x 893, 895 (11th Cir. 2007).

Bandy's conclusory allegation that the requisite amount in controversy is met is not supported by the facts alleged in the Complaint and is therefore insufficient to establish that this Court has diversity jurisdiction over her claims.

## IV.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that Midland's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED** as to Bandy's federal claims, which are **DISMISSED with prejudice**, and that Bandy's remaining claims under state law are **DISMISSED without prejudice**.

Final judgment shall issue by separate document.

**DONE** and **ORDERED** this the **18**[th] day of **January 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**